COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS





WILLIAM OFFORD,

                                    Appellant,

v.

THE STATE OF TEXAS,

                                    Appellee. 

§
 
§
 
§
 
§
 
§

§


No. 08-05-00255-CR

Appeal from
Criminal District Court No. 4

of Dallas County, Texas

(TC # F-0421527-PK)



 

 

 





O P I N I O N

            William Offord appeals his jury conviction for aggravated assault, enhanced by the allegation
of a prior felony conviction. The court sentenced him to eight years’ imprisonment in the
Institutional Division of the Texas Department of Criminal Justice. We affirm.
FACTUAL SUMMARY
            In September 2004, James Yoakum was employed by S & R Sand & Gravel as a security
guard. He also patrolled nearby properties belonging to Tommie Goodwin and TXI, another gravel
company. While on S & R property, Yoakum would carry a gun for which he had no license. He
would eject trespassers from Goodwin’s and TXI’s property for fishing without permission. One
of these trespassers was Appellant, William Offord. Yoakum had asked Appellant to leave both
properties on two occasions prior to September 25, 2004.
            Yoakum first encountered Appellant on Goodwin’s property along Beckett Road a few
months prior to the incident at issue. Yoakum approached Offord, who was fishing, and asked him
to leave the premises. Appellant replied he had “Ms. Cook’s” permission to fish on the property and
cursed when Yoakum confirmed from Goodwin that Appellant had to leave. Their second encounter
was of a similar nature. Appellant was fishing in a lake on the opposite side of Beckett Road on TXI
property. Yoakum had just asked four men to leave the property, and they had complied without
incident. As these four individuals were leaving, Appellant approached on his bicycle, cursing and
telling the men that Yoakum did not have the authority to expel them from the property. He then
threatened to pull Yoakum out of his truck and kill him.
            The third and final encounter occurred around 6 p.m. on September 25, 2004, when Yoakum
caught Appellant and his cousin, Larry Beggs, fishing on Goodwin’s property. Yoakum approached
them and again told Appellant he did not have permission to fish. Since Larry had permission to
fish, Appellant argued that he too was allowed on the property. He rode his bicycle to Goodwin’s
home to speak with her. Yoakum followed him and heard Goodwin firmly reiterate that Appellant
did not have permission to be on her property. Appellant accepted this rejection, apologized, and
left on his bicycle. Yoakum remained with Goodwin for a few more minutes, then left in his truck. 
He started out on Beckett Road and as he drove past Appellant, he heard something “pop.” He
thought Appellant had thrown a rock at the truck. Appellant was sitting on the side of the road when
Yoakum stopped. By then, Appellant was approaching the open driver’s side window of Yoakum’s
truck on his bicycle.
            Yoakum thought he heard Appellant say, “This will teach you to mess with me” as he raised
a silver automatic handgun about six to eight inches from Yoakum’s face. Yoakum managed to jerk
his head back as Appellant pulled the trigger and fired a single shot that ultimately hit the inside door
panel on the right-hand side of the truck. The flash from the gun shot temporarily blinded Yoakum
and the gunpowder discharge burned his face and glasses. He fell over in the seat as he heard
Appellant ride away, yelling and screaming indistinctly.
            Still parked in the same location and unable to see, Yoakum managed to call Goodwin so that
she could notify law enforcement. A few minutes later, Yoakum regained his vision and drove to
Appellant’s property to ensure that he would not leave. Yoakum called the sheriff’s department and
waited for officers to arrive.
            Ten minutes after the call was placed, Deputy Joseph Mundy of the Dallas Sheriff’s
Department arrived at the scene and met Yoakum, who appeared scared and was visibly shaking. 
Yoakum did not initially report that Appellant had shot at him, but did point the officers in the
direction of Appellant’s residence.
            Detective Matthew Randall also responded to the emergency call. He took photographs of
Yoakum and his truck. These photographs served as State’s Exhibits 1 through 10 and illustrated
the bullet hole found inside Yoakum’s truck, the burns on his face and glasses, and the location of
the incident. Exhibits 9 and 10 contained images of burns on Yoakum’s face and glasses consistent
with a gun being discharged in close proximity to his head. When he inspected the truck, Randall
found a small tear on the inside panel of the right-side door, a larger hole in the under side metal
portion of the door, shattered glass and a single bullet in the inside of the door. He did not find any
firearms in the truck nor had he allowed Yoakum to remove anything before inspection. 
            Officer Larry Oliver conducted a follow-up investigation the day after the incident. Though
he made attempts to find the gun, he wasn’t able to do so. He searched for Appellant at his residence
but Appellant’s wife, Helen Rogers, said he wasn’t home. Oliver returned the following day with
no success. A few weeks later, Appellant surrendered to Officer Oliver and confirmed the details
of the incident on September 25. But he claimed he did not try to shoot Yoakum and he didn’t own
a firearm.
            Rogers and Appellant’s nephew, Vincent Offord, testified for the defense. Rogers said that
two detectives had visited her home three days after the incident looking for Appellant. She
consented to a search of the home but she did not know where Appellant was. She explained that
Appellant did not own a gun and she had never seen him with a gun. When asked if Appellant could
have kept a gun at another location, she responded that “anything is possible.” Appellant typically
came and went as he pleased and did not always stay the night at their home.
            Vincent Offord testified that he recognized Yoakum as a security guard for S & R Sand &
Gravel and had come in contact with him on a frequent basis. He had not witnessed the incident on
September 25, 2004, and he did not fish in that area.
FACTUAL SUFFICIENCY
            In his sole issue for review, Appellant complains that the evidence is factually insufficient
to support his conviction for the offense of aggravated assault with a deadly weapon. Specifically,
Appellant contends that the complainant’s story is so illogical that it casts significant doubt upon its
veracity.
Standard of Review
            In addressing a factual insufficiency complaint, we view all the evidence in a neutral light,
favoring neither party. Johnson v. State, 23 S.W.3d 1, 7 (Tex.Crim.App. 2000); Clewis v. State, 922
S.W.2d 126, 129 (Tex.Crim.App. 1996). Evidence is factually insufficient if it is so weak that it
would be clearly wrong and manifestly unjust to allow the verdict to stand, or the finding of guilt is
against the great weight and preponderance of the available evidence. Johnson, 23 S.W.3d at 11. 
Therefore, the question we must consider is whether a neutral review of all the evidence, both for
and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine
confidence in the fact finder’s determination, or the proof of guilt, although adequate if taken alone,
is greatly outweighed by contrary proof. See id. In performing this review, we are to give due
deference to the fact finder’s determinations. See id. at 8-9; Clewis, 922 S.W.2d at 136. The fact
finder is the judge of the credibility of the witnesses and may “believe all, some, or none of the
testimony.” Chambers v. State, 805 S.W.2d 459, 461 (Tex.Crim.App. 1991). Consequently, we may
find the evidence factually insufficient only where necessary to prevent a manifest injustice from
occurring. See Johnson, 23 S.W.3d at 9, 12; Cain v. State, 958 S.W.2d 404, 407 (Tex.Crim.App.
1997).
Aggravated Assault
            Appellant was accused of committing aggravated assault with a deadly weapon by
threatening the complainant with a firearm. A person commits the offense of assault if the person
intentionally or knowingly threatens another with imminent bodily injury. Tex.Pen.Code Ann.
§ 22.01(a)(2)(Vernon 2003). Aggravated assault occurs if a person commits assault as defined in
Section 22.01 and the person uses or exhibits a deadly weapon during the commission of the assault. 
Tex.Pen.Code Ann. § 22.02(a)(2). A deadly weapon is defined as a firearm or anything manifestly
designed, made, or adapted for the purpose of inflicting death or serious bodily injury. 
Tex.Pen.Code Ann. § 1.07(a)(17)(A)(Vernon 2003).
            During trial, Yoakum testified he and Appellant had a history of confrontations. On this
particular day, he believed Appellant had thrown a rock at his truck, at which point he stopped in
order to confront him. Yoakum was not aware Appellant was carrying a gun. Appellant approached
the open driver’s side window and pointed a gun at his face. Yoakum jerked his head back as
Appellant fired a single shot and ran away. From the standpoint of the defense, Rogers testified that
Appellant did not own a gun nor had she seen Appellant with a gun either before or after the
incident, but he might have kept a gun at a different location. Officer Oliver testified that Appellant
denied owning a gun or shooting Yoakum. Appellant suggests that Yoakum’s story is implausible
because Appellant would not have missed him had he wanted to shoot him, and Yoakum would not
have stayed in a location near Appellant’s property having almost been shot. As these are matter of
credibility, it was the function of the factfinder to resolve the issues. See Cain, 958 S.W.2d at 410.
            Appellant also questions the credibility of the corroborating evidence as well. Appellant
argues that Yoakum could have fired a bullet into his own truck and caused his bodily injuries by
accidentally discharging his own weapon near his face. This version of events is speculative since
there was no direct evidence indicating that any such thing occurred. While Yoakum admitted that
he carried a gun on occasion, there was no evidence he was armed on this occasion. After reviewing
all the evidence in a neutral light, we conclude that the evidence is factually sufficient to support the
conviction. We overrule the sole point and affirm the judgment of the trial court.


January 25, 2007                                                         
                                                                                    ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Barajas, C.J. (Ret.)
Barajas, C.J. (Ret.), sitting by assignment, not participating

(Do Not Publish)